IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOEL RANCK,

    Plaintiff,

v.

MT. HOOD CABLE REGULATORY COMMISSION; COUNTY OF MULTNOMAH, an Oregon Municipal Corporation; CITY OF FAIRVIEW, an Oregon Municipal Corporation; CITY OF PORTLAND, an Oregon Municipal Corporation; CITY OF GRESHAM, an Oregon Municipal Corporation; CITY OF TROUTDALE, an Oregon Municipal Corporation; CITY OF WOOD VILLAGE, an Oregon Municipal Corporation,

    Defendants.

Case No. 3:16-cv-02409-AA
OPINION AND ORDER

AIKEN, Judge:

Plaintiff Joel Ranck ("plaintiff") filed this lawsuit in Multnomah County Circuit Court in November 2016 against the Mt. Hood Cable Regulatory Commission, Multnomah County, and the cities of Portland, Gresham, Fairview, Troutdale, and Wood Village ("defendants"). Plaintiff claims that defendants breached their fiduciary and trust responsibilities, and engaged in commingling and conversion, under Oregon state law. Plaintiff alleges generally that

Page 1 – OPINION AND ORDER

defendants' application of Public, Educational, and Government ("PEG") fees to uses other than the capital costs incurred for PEG access facilities violated 47 U.S.C. § 571 *et seq.* of the Cable Communications Policy Act ("FCA"). More specifically, plaintiff challenges defendant Mt. Hood Regulatory Commission's grant programs, which provide funding to community and educational groups, including public schools, insofar as such programs are "non-capital purposes." Pl.'s Second Am. Compl. ¶ 61 (doc. 1-1 at 47-68). Although the alleged violations of the FCA are central to plaintiff's state-law claims, plaintiff does not bring a claim under the FCA itself.

Defendants removed this case to federal court. Plaintiff moved to remand for lack of subject matter jurisdiction, and asked for sanctions and fees due to improper removal. For the reasons provided below, plaintiff's motion is DENIED.

## STANDARDS

There is a strict presumption against removal, and the party seeking removal bears the burden of establishing that jurisdiction is proper. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) (citing *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) and *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004)). Even though the removing party has the burden of establishing jurisdiction, a federal court "may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action[.]" *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (quotation marks and citations omitted).

## DISCUSSION

District courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. According to the Supreme Court's recent, unanimous decision in *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013),

Page 2 – OPINION AND ORDER

there are two ways cases can arise under federal law. First, and most commonly, a case arises under federal law "when federal law creates the cause of action asserted." *Id.* Second, and less frequently, a case may arise under federal law pursuant to the four-part test the Supreme Court initially laid out in *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ("*Grable* test"). *Id.* (citing *Grable*, 545 U.S. at 313-14).

A state-law claim presents a justiciable federal question only if it satisfies both the well-pleaded complaint rule and passes the four-part *Grable* test. *Cal. Shock Trauma Air Rescue v. State Compensation Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011). I start with whether plaintiff's claims satisfy the well-pleaded complaint rule, then turn to whether they pass *Grable*'s four-part test. If plaintiff's claims do both, they arise under federal law, this Court has jurisdiction, and plaintiff's motion to remand must be denied.

I.  *Well-Pleaded Complaint*

The well-pleaded complaint rule requires the federal issue to appear on the face of the complaint. *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Here, the federal issue is whether defendants' use of PEG fees violated the FCA. Plaintiff's state-law claims are: first, a breach of fiduciary duty/trust claim due to defendants' handling of PEG fees in violation of the FCA; second, a claim for an accounting of defendants' use of PEG fees to determine whether defendants' use violated the FCA; third, a claim that defendants commingled and converted PEG fees in violation of the FCA; fourth, a claim for a preliminary and permanent injunction to stop defendants' allegedly improper use of PEG fees in violation of the FCA; and fifth, a claim for a declaratory judgment that defendants' use of PEG for "non-capital purposes" violated the FCA. Pl.'s Second Amend. Compl. ¶¶ 31-63. Clearly, the federal issue appears on

the face of plaintiff's five state-law claims, and the well-pleaded complaint requirement is satisfied.

II.   *Grable Test*

Under the *Grable* test, a case "arises under" federal law when a state-law claim contains a federal issue that is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance. *Gunn*, 133 S. Ct. at 1065 (citing *Grable*, 545 U.S. at 313-14). While the Ninth Circuit has cited *Gunn* in one published decision, it has not specifically addressed the *Grable* test since *Gunn*. *See United States v. McIntosh*, 833 F.3d 1163, 1170 (9th Cir. 2016) (citing *Gunn*, but only for the proposition that "[f]ederal courts are courts of limited subject matter jurisdiction, possessing only that power authorized both by the Constitution and Congress."). That said, the Ninth Circuit has applied *Grable* generally. *Nevada v. Bank of Am.*, 672 F.3d at 674 ("A state cause of action invokes federal question jurisdiction only if it 'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'") (quoting *Grable*, 545 U.S. at 314) (alteration in original); *Cal. Shock*, 636 F.3d at 542. The Ninth Circuit has not, however, been consistent in either applying or analyzing the four parts of the *Grable* test. *See, e.g., Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130-31 (9th Cir. 2012) (quoting and citing the relevant *Grable* text, but not applying it as a test, and not analyzing the four parts); *Provincial Gov't of Marinduque*, 582 F.3d at 1086-87 (same); *Potter v. Hughes*, 546 F.3d 1051, 1065 (9th Cir. 2008) (same). Accordingly, I follow the Ninth Circuit as closely as I can, but supplement it with relevant district court analysis of *Grable*, as well as with relevant analysis from other circuits.

A. *Necessarily Raised*

A federal issue is necessarily raised when the issue is "pivotal" to the case. *Nevada v. Bank of Am.*, 672 F.3d at 675. An issue is pivotal to a case when the plaintiff's claims cannot be supported by an alternative or independent state-law theory. *Id.* Here, all of plaintiff's claims turn on the federal issue of whether the FCA allows defendants' use of PEG fees. Plaintiff has no alternative or independent theories. For example, in order to prevail on plaintiff's Oregon state-law breach of fiduciary duty/trust claim, plaintiff must prove that a fiduciary duty exists, that defendants breached their fiduciary duty, and that plaintiff was injured as a result. *Pereira v. Thompson*, 217 P.3d 236, 247 (Or. Ct. App. 2009) (citing *Lindland v. United Bus. Invs.*, 693 P.2d 20, 25 (1984)). Plaintiff alleges that the source of defendants' fiduciary duty is that "[d]efendants are required to hold, maintain, and allocate the tax monies [*i.e.*, PEG fees] for the benefit of Plaintiff and other citizen taxpayers pursuant to the terms created by virtue of the FCA and other legal and fiduciary duties." Pl.'s Second Amend. Compl. ¶ 36.[1] But plaintiff never elaborates on those "other" duties, alleging only that defendants breached their fiduciary duty through "unauthorized spending and pledging of the PEG fees . . . as prohibited by the FCA" and "entering franchise agreements wih cable operators that exceed the scope of proper use of PEG fees, . . . in contravention of the FCA." *Id.* at ¶¶ 37, 38. Plaintiff alleges that plaintiff and "other citizen cable subscribers" were damaged because they did not receive "the intended benefits of PEG money as regulated by the FCA." *Id.* at ¶ 39. It is clear from plaintiff's breach of fiduciary duty/trust claim that this claim turns on the federal issue of whether defendants' use of PEG fees violated the FCA. The same is true of plaintiff's other state-law claims. Therefore, the federal

---

[1] Plaintiff intermittently refers to PEG fees as "taxes" or "tax monies," but provides no legally supported argument that PEG fees should be considered a tax. Further, plaintiff brings no state or federal tax claims.

Page 5 – OPINION AND ORDER

issue is pivotal to this case, and so necessarily raised.[2] The first part of the *Grable* test is satisfied.

B.  *Actually Disputed*

A federal issue is actually disputed when it is the "primary focus of the [c]omplaint," and not "merely a peripheral issue." *Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 842, 852-53 (D. Haw. Nov. 30, 2006).[3] Here, there is no question that the primary focus of plaintiff's complaint is whether defendants' use of PEG funds violated the FCA. Plaintiff's complaint references PEG fees at least 80 times, specifically discusses whether defendants' use of PEG's was proper at least 25 times, and specifically refers to the FCA at least 20 times. As just one of many examples, plaintiff alleges, "[p]ursuant to the FCA, PEG fees are narrowly limited to use for the capital costs incurred for PEG access facilities, namely capital costs associated with the construction of PEG access facilities for channel capacity designated for public, education, or governmental use and equipment for the use of such channel capacity." Pl.'s Second Amend. Compl. ¶ 27. It is clear that the federal issue here is more than merely peripheral—it is the

---

[2] Further, Plaintiff concedes that the federal issue is necessarily raised. Pl.'s Reply Defs.' Resp. Pl.'s Mot. Remand 6 (doc. 12) ("As the Supreme Court stated in *Gunn*, 'It is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim "necessarily raise[s]" a disputed issue, as *Grable* separately requires.'").

[3] The Hawaii district court's holding is consistent with other recent circuit court interpretations of *Gunn* regarding the second part of the *Grable* test. *See, e.g., Bd. of Comm'rs of Se. La. Flood Protection Authority-E. v. Tenn. Gas Pipeline Co., LLC*, 850 F.3d 714, 721 n.9 & n.10., 723 (5th Cir. 2017) (indirectly applying the *Grable* test via *Gunn* and *Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008), and finding that when claims "cannot be resolved without" resolving a disputed question of federal law, the issues are actually disputed); *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016) (finding that a federal issue is actually disputed "when the federal issue is the only or the central point in dispute") (quoting and citing *Grable*, 545 U.S. at 315, and *Gunn*, 133 S. Ct. at 1065)).

primary focus of plaintiff's complaint. Therefore, it is actually disputed. The second part of the *Grable* test is satisfied.

C.  *Substantial*

A federal issue is substantial when it presents "'a serious federal interest in claiming the advantages thought to be inherent in a federal forum,' one that 'justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers.'" *Oregon v. Gen. Nutrition Corp.*, 2016 WL 3382137, at *4 (D. Or. Mar. 30, 2016) (citing *Grable*, 545 U.S. at 312-13) (alteration normalized).[4] This factor concerns not the significance of the issue "to the particular parties in the immediate suit" but "the importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. The explicit purposes of the FCA include establishing "a national policy concerning cable communications," "franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community," and "guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems[.]" 47 U.S.C. §§ 521(1), (2), & (3). Congress explicitly intended the FCA to establish uniform national policy, procedures and standards, and guidelines for cable companies and franchises on federal, state, and local levels. Allowing disparate state courts to establish different standards for the acceptable use of PEG fees could undermine that uniformity. Therefore, the federal issue in this

---

[4] This recent District of Oregon understanding of what makes a federal issue substantial is consistent with earlier District of Oregon applications of this part of the *Grable* test. *See, e.g., Oregon ex rel. Kroger v. Johnson & Johnson*, 832 F. Supp. 2d 1250, 1256-57 (D. Or. 2011). This understanding is also consistent with other circuit interpretations of substantiality under *Grable. See, e.g., N.Y. ex rel. Jacobson*, 824 F.3d at 316; *Evergreen Square of Cudahy v. Wisc. Housing & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015); *Mun. of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 13-14 (1st Cir. 2013).

Page 7 – OPINION AND ORDER

case and the congressionally intended need for uniformity justifies resorting to the experience, solicitude, and hope of uniformity that a federal forum offers. This is a serious federal interest.

Plaintiff argues that the federal issue here is not substantial because it involves an inquiry into the FCA that is "merely hypothetical," "fact-bound and situation specific," and "novel." Pl.'s Reply Defs.' Resp. Pl.'s Mot. Remand 6 (quoting and citing *Gunn*, 133 S. Ct at 1067, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), and *Nevada v. Bank of Am.*, 672 F.3d at 675). The inquiry into the federal issue here is not merely hypothetical because all of plaintiff's claims explicitly depend on it. Nor is it fact-bound and situation specific because plaintiff's claims ask a court—either this Court or the Multnomah County Circuit Court—to interpret the FCA and decide which uses of PEG fees are appropriate and which are violations of the FCA. Finally, while plaintiff's claims may indeed be novel, the Ninth Circuit's full analysis of the significance of novelty in *Nevada v. Bank of America* concluded that "[w]e do not believe the question of whether a particular claim arises under federal law depends on the novelty of the federal issue." 672 F.3d at 675 (quoting and citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 817 (1986)). I am not convinced by plaintiff's argument on these points.

Plaintiff also argues that two district court opinions from other districts should persuade me that the federal issue here is not substantial. Pl.'s Reply Defs.' Resp. Pl.'s Mot. Remand 10. The two cases are *Lindstrom v. City of Des Moines, Iowa*, 470 F. Supp. 2d 1002 (S.D. Iowa 2007), and *Commonwealth of Pa. v. Comcast Corp.*, 1994 WL 568479 (E.D. Pa. Oct. 11, 1994). Plaintiff argues that both these cases "stand for the proposition" that the federal issue here is not "implicated to any substantial extent." Pl.'s Reply Defs.' Resp. Pl.'s Mot. Remand 10. I am not persuaded that either case applies.

In *Lindstrom*, the plaintiffs sued various Iowa municipalities for collecting cable franchise fees, arguing that collecting them violated an Iowa statute prohibiting cities from levying taxes unless specifically authorized by state law. *Lindstrom*, 470 F. Supp. 2d at 1005. Further, in *Lindstrom*, the FCA was not directly referenced in the plaintiffs' complaint; instead, it was indirectly referenced in two of the disputed franchise agreements. *Id.* at 1012. The Iowa District Court found that "the mere fact that Franchise Agreements reference the [FCA] does not mean that the action arises under federal law, or even necessarily implicates federal law to any substantial extent." *Id.* It was on this basis that the Iowa District Court concluded that plaintiffs' claims did not satisfy *Grable* and remanded the case to state court. *Id.* Unlike the plaintiffs in *Lindstrom*, plaintiff here does not claim that the collection of PEG fees is itself prohibited by state law. Also unlike the plaintiffs in *Lindstrom*, who only indirectly referenced the FCA in their complaint, plaintiff here directly references the FCA at least 25 times in his complaint. Because of these dissimilarities, I do not find *Lindstrom* persuasive.

In *Commonwealth v. Comcast*, an unreported opinion decided decades before *Grable*, the state of Pennsylvania sued Comcast for alleged violations of Pennsylvania's state consumer protection act. 1994 WL 568479, at *1. The complaint alleged that Comcast had violated § 543(f) of the FCA, and that this violation was a "per se violation" of the state consumer protection act. *Id.* The court concluded that because § 543(f) of the FCA contained "no private, federal remedy," the claim itself did not raise a substantial question of federal law. *Id.* In support of this conclusion, the court quoted and cited *Merrell Dow*, 478 U.S. at 804 and *Smith v. Indus. Valley Tile Ins. Co.*, 957 F.2d 90 (3rd Cir. 1992) (which itself cited *Merrell Dow* to this effect). In *Grable*, the Supreme Court expressly rejected this line of reasoning, finding that applying *Merrell Dow* in this way would both "overturn[] decades of precedent," and "convert[]

Page 9 – OPINION AND ORDER

a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 316. Because the federal issue in this case is substantial, the third part of the *Grable* test is satisfied.

D. *Federal-State Balance*

A federal issue is resolvable without disrupting the federal-state balance when exercising jurisdiction over the state-law claims will not disturb any "congressionally approved balance of federal and state judicial responsibilities." *Nevada v. Bank of Am.*, 672 F.3d at 675 (quoting and citing *Grable*, 545 U.S. at 314). In *Nevada v. Bank of America*, the Ninth Circuit looked at whether state courts were "frequently" handling lawsuits based on the federal statutes at issue, and found that "[e]xercising federal question jurisdiction over any state law claim that references a federal consumer protection statute would herald a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 676 (quoting and citing *Grable*, 545 U.S. at 319) (internal quotation marks omitted). Here, there is no such concern. There are roughly three dozen federal and state cases ever recorded involving the FCA and PEG fees, most of them involving municipalities suing cable providers, and the split between the federal cases and the state cases is about fifty-fifty. *Compare, e.g.*, *City of Glendale v. Marcus Cable Assocs., LLC*, 185 Cal. Rptr. 3d 331 (Cal. Ct. App. 2015) *with, e.g.*, *City of Detroit v. Comcast of Detroit*, 771 F. Supp. 2d 781 (E.D. Mich. 2011). Accordingly, there is no reason to think exercising federal jurisdiction here will herald an enormous shift of state cases into federal court. I see no reason why exercising jurisdiction over plaintiff's state-law claims will disturb any congressionally approved balance of state and federal judicial responsibilities. The fourth part of the *Grable* test is also satisfied.

Plaintiff argues that not remanding this case would disrupt the "balance struck by Congress" because "[t]he [FCA] itself lists as one of its goals the establishment of guidelines for

not just Federal regulation of cable systems, but also for State and local regulations of cable systems." Pl.'s Reply Defs.' Resp. Pl.'s Mot. Remand 7 (citing 47 U.S.C. § 521(3)). Plaintiff does not cite any state cases, or any state or local regulations, in support of his argument. Instead, plaintiff argues that "[t]o the extent that Congress declined to occupy the entire field of regulation of cable operators and systems, it clearly intended to permit State and local authorities to play a substantial part in the regulation of cable services." *Id.* (citing *Lindstrom*, 470 F. Supp. 2d at 1012). I do not disagree with plaintiff that the FCA explicitly states that it intends to permit state and local authorities to play a part in the regulation of cable services. But agreeing with plaintiff on this point does not establish that hearing his particular case in federal court would disrupt the federal-state balance. This case is about an individual suing cable franchises and the municipalities that contract with them for violating the FCA, not about the part that state and local authorities should play in regulating cable services. In addition, I have already explained why *Lindstrom* is not persuasive. Accordingly, the fourth part of the *Grable* test is satisfied.

Because I found that all four parts of the *Grable* test are satisfied, the federal issue "arises under" federal law, and this Court has jurisdiction over this case according to 28 U.S.C. § 1331.

III.  *Sanctions and Fees*

Plaintiff asks for sanctions and fees, alleging that defendants' removal was improper. However, the federal statute provides for a fee award only when a case is remanded. *See* 28 U.S.C. § 1447(c); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (holding that fees generally may be awarded under § 1447(c) if a defendant's removal was "objectively unreasonable"). Therefore, I will not award plaintiff sanctions or fees.

## CONCLUSION

Plaintiff's motion to remand (doc. 6) is DENIED.

IT IS SO ORDERED.

Dated this 2nd day of May 2017.

_____
Ann Aiken
United States District Judge