IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOEL RANCK,

   Plaintiff,

  v.

MT. HOOD CABLE REGULATORY
COMMISSION, an Oregon Municipal
Corporation; COUNTY OF
MULTNOMAH, an Oregon Municipal
Corporation; CITY OF FAIRVIEW, an
Oregon Municipal Corporation; CITY OF
PORTLAND, an Oregon Municipal
Corporation; CITY OF GRESHAM, an
Oregon Municipal Corporation; CITY
OF TROUTDALE, an Oregon Municipal
Corporation; and CITY OF WOOD
VILLAGE, an Oregon Municipal
Corporation,

   Defendants.

Case No. 3:16-cv-02409-AA
OPINION AND ORDER

AIKEN, District Judge.

  Plaintiff in this action is a resident of Portland, Oregon and a cable subscriber. Defendants are Multnomah County; the cities of Fairview, Gresham, Portland, Troutdale, and Wood Village; and Mt. Hood Cable Regulatory Commission ("MHCRC"), a public body created

pursuant to an intergovernmental agreement between Multnomah County and the cities located in Multnomah County. *See* Second Am. Compl. ¶¶ 6–17.[1] MHCRC carries out cable regulation and administration on behalf of the county and cities located in the county. Glick Decl. Ex. 3 at 1 Mar. 7, 2017.

Defendants collect fees from cable providers doing business in Multnomah County. Per the Federal Cable Act ("FCA"), 47 U.S.C. §§ 521–73, licensing governmental bodies may charge cable providers franchise fees of up to five percent of a cable provider's gross revenue. 47 U.S.C. § 542(b). In addition to franchise fees, licensing governmental bodies may require cable providers to pay fees to support public, educational, or governmental access facilities ("PEG fees"). *See id.* § 542(g)(2)(C). The FCA limits franchise fee rates, but not how the franchise fees are spent. The FCA does not limit PEG fee rates, but limits use of PEG fees. *See, e.g., All. for Cmty. Media v. F.C.C.*, 529 F.3d 763, 783–84 (6th Cir. 2008) (distinguishing between "'costs incurred in or associated with the construction of PEG access facilities,' which qualify as capital costs and therefore fall into the franchisee fee exclusion," and "'payments in support of the use of PEG access facilities,' which do not qualify as capital costs and so are subject to the statutory cap on franchise fees" (quoting 22 F.C.C Rcd. 5101, 5150–51)).

Individual franchise agreements between defendants and various cable providers provide additional guidance regarding PEG fees. Within Multnomah County, there are a total of five franchise agreements with four different cable operators. City of Portland and MHCRC Mot. Dismiss 8. Each agreement authorizes defendants to impose PEG fees at a rate of three percent

---

[1] The Second Amended Complaint, which was the operative complaint at the time of removal to federal court and remains the operative complaint now, is part of attachment one to the notice of removal. *See* Doc. 1-1 at 47–68.

Page 2 – OPINION AND ORDER

of each cable provider's gross annual revenue for cable services inside the franchise area. *Id.* at 9; Glick Decl. Ex. 1 § 7.1 Mar. 7, 2017.

Cable providers are empowered to pass this cost on to their consumers. Cable providers may choose to itemize the equivalent cost of the PEG fees on subscribers' bills. 47 U.S.C. § 542(c).

The franchise agreements provide that PEG fees "shall be allocated to provide support for Capital Costs related to PEG Access and the I-Net."[2] Glick. Decl. Ex. 1 § 7.1(A) Mar. 7, 2017. The agreements further provide a mechanism for addressing improper spending of PEG fees. *Id.* § 7.6. If a cable provider suspects that PEG fees are not being used in accordance with the franchise agreement, the cable provider may conduct a financial review or audit of the relevant government records. The franchise agreements provide four remedial outcomes in the event that funds were spent improperly.[3]

On November 3, 2016, plaintiff filed this action in the Circuit Court of the State of Oregon for the County of Multnomah. Notice Removal ¶ 2. In his Second Amended Complaint, plaintiff asserted claims for breach of fiduciary duty/breach of trust; accounting;

---

[2] The "I-Net" is defined by the agreements as "Capacity on the Cable System facilities used to provide one-way and bi-directional communication services among "I-Net Institutions," which include public schools, community colleges, public libraries, and local government agencies. Glick Decl. Ex. 1 §§ 3.32 & 3.33 Mar. 7, 2017.

[3] If an audit (conducted by the cable provider) determines that PEG fees were spent incorrectly, the city in question must discern if the recipient of the PEG fees has access to sufficient unrestricted funds. If the recipient does have access to sufficient unrestricted funds, the city may require the recipient to either: (1) "expend its unrestricted funds to achieve the stated purposes of the original PEG/I-Net funding not spent in accordance with this franchise"; or (2) return the funds in question to the PEG funding account. Glick Decl. Ex. 1 § 7.6(A) Mar. 7, 2017. If the recipient does not have access to sufficient unrestricted funds, the city may require the recipient to either: (1) reimburse the PEG/I-Net funding account for the amount in question; or (2) have future PEG funding reduced by the amount of the improper spending. *Id.* § 7.6(B). The ultimate decision as to which option to exercise lies with the city. *Id.* § 7.6(C).

commingling/conversion of trust funds; preliminary and permanent injunction; and declaratory judgment. *See* Second Am. Compl. ¶¶ 31–63. In sum, plaintiff avers that defendants are spending PEG fees outside the bounds of what the FCA and the franchise agreements allow. Defendants move to dismiss plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). For the reasons below, defendants' motions are granted.

## STANDARDS

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Rule 12(b)(1). *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* By contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* The party seeking to invoke the district court's jurisdiction bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## DISCUSSION

I.   *Article III Standing*

To demonstrate Article III standing, a plaintiff must show: (1) she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the defendant's challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff asserts

pecuniary and nonpecuniary injury arising from the challenged PEG expenditure. As discussed below, plaintiff fails to establish Article III standing for his claims.

A. *Standing – Pecuniary Claims*

Plaintiff asserts that he and other "citizen cable subscribers" were—and are—overtaxed because of defendants' improper spending of PEG fees.[4] Second Am. Compl. ¶¶ 2, 37–39, 49, 62. In the context of pecuniary injury arising from taxation, there is a high threshold to establish Article III standing. In *Doremus v. Board of Education of Borough of Hawthorne*, 342 U.S. 429, 434 (1952), the Supreme Court responded to a challenge to a state tax:

> [W]e reiterate what the Court said of a federal statute as equally true when a state Act is assailed: 'The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and *not merely that he suffers in some indefinite way in common with people generally.*'

(quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (emphasis added)). The Ninth Circuit applies this principle to municipal taxation: "the *Doremus* requirement of a pocketbook injury applies to municipal taxpayer standing as well as to state taxpayer standing." *Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991).

First, I examine whether plaintiff has established an injury in fact. To have Article III standing to challenge a municipal tax, a municipal taxpayer "must allege a direct injury caused by the expenditure of tax dollars[.]" *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). When a pecuniary injury arises from over-taxation, it is characterized as a pocketbook injury. *See Cammack*, 932 F.2d at 771. The Second Amended Complaint adequately alleges a

---

[4] It is unclear whether plaintiff correctly characterizes PEG fees as a tax. PEG fees are imposed by defendants on cable providers. The FCA and franchise agreements allow cable providers to list the "PEG fee" as a line item on subscribers' bills, but this is not a tax directly imposed by municipal governments on citizens. For the purposes of the standing analysis, I assume but do not decide that the PEG fees are taxes.

Page 5 – OPINION AND ORDER

pocketbook injury because plaintiff "set[s] forth [his] status" as a municipal taxpayer and "specifically states" that the PEG fees are being spent in unauthorized ways. *Id.*

Next, I turn to causation. The causation element of standing requires that the injury is "fairly traceable" to defendants' challenged conduct. *Lujan*, 504 U.S. at 560 (ellipsis and quotation marks omitted). Plaintiff asserts a nexus between the alleged improper spending of PEG fees and his alleged pocketbook injury. Plaintiff speculates that the alleged improper spending of PEG fees caused him to endure a higher tax burden than he would have borne if the PEG fees were spent in accordance with the FCA and franchise agreements.

However, defendants are empowered by the FCA, as limited by the franchise agreement, to collect up to three percent of cable providers' gross annual revenue for PEG purposes. *See* 47 U.S.C.A. § 531; Glick Decl. Ex. 1 § 7.1 Mar. 7, 2017. Plaintiff's assumption that defendants' decision to spend PEG fees on particular programs caused his cable bill to be higher is too speculative to satisfy the causation element of standing. How the PEG fees are spent and if PEG fees may be collected are two separate questions. Here, plaintiff only challenges how the PEG fees are being spent, which does not affect the amount of taxes that plaintiff must pay. Therefore, plaintiff's tax burden is not fairly traceable to defendant's challenged conduct.

Next, I analyze redressability, which is related to causation. In *ASARCO Inc. v. Kadish*, 490 U.S. 605, 616–17 (1989), the Supreme Court ruled that the plaintiffs did not have Article III standing to bring a tax relief claim against the state and a class of lessees of state lands.[5] *See id.* at 624. The plaintiffs argued that Arizona law governing mineral leases diverted millions of dollars from the state's educational trust fund, requiring the state to raise revenue for education

---

[5] The Court ultimately held that the plaintiffs had standing on separate grounds. *ASARCO Inc.*, 490 U.S. at 624.

elsewhere. *Id.* at 614. The Court stated that even if the plaintiffs were correct that the defendants' actions resulted in unnecessarily high taxes, it was "pure speculation" that a successful lawsuit "would result in any actual tax relief" for the plaintiffs. *Id.* The Court reasoned, "courts are unable to evaluate with any assurance the 'likelihood' that decisions will be made a certain way by policymaking officials acting within their broad and legitimate discretion." *Id.* at 615.

Plaintiff seeks tax relief based on allegedly illegal spending. But enjoining the illegal spending cannot redress plaintiff's pocketbook injury—only stopping the collection of the tax itself can. Courts lack jurisdiction to enjoin lawful conduct. Because the tax itself is apparently legal, plaintiff's pocketbook injury is not redressable.

In summary, although plaintiff has alleged a pocketbook injury, that injury is not caused by defendants' allegedly illegal actions, nor is it redressable by the courts.[6]

B.   *Standing – Nonpecuniary Claims*

Plaintiff further alleges that "[p]laintiff and other citizen cable subscribers have been damaged in not receiving the intended benefits of the PEG money as regulated by the FCA." Second Am. Compl. ¶ 39. Plaintiff seeks to enjoin future improper spending because of the loss of these intended benefits. *See id.* at 21. Here, plaintiff fails to establish an injury in fact. In

---

[6] The East County Jurisdictions (cities of Fairview, Gresham, Troutdale, and Wood Village) argue that plaintiff lacks standing to assert a claim against them because he is not a resident of those jurisdictions. Other circuits require taxpayers to be residents of the taxing municipality to challenge a municipal tax. *See, e.g., Smith v. Jefferson Cty. Bd. of Sch. Comm'rs,* 641 F.3d 197, 209 (6th Cir. 2011). Plaintiff counters that he has standing to assert a claim against all governmental entities affiliated with MHCRC because they improperly commingle and misallocate the entire county's PEG funds. There exists scant authority on whether the commingling of municipal tax funds with foreign jurisdictions allows a non-resident to assert a claim against the foreign jurisdiction based on municipal taxpayer standing. This issue need not be resolved because plaintiff lacks standing to assert any claim, even against the municipality in which he resides.

fact, plaintiff does not even establish a shared concrete injury, let alone a particularized one. Merely asserting a general loss of benefits is too vague to sufficiently establish a concrete and particularized injury in fact.

It is unnecessary to delve into causation and redressability when there is simply no injury in fact. *See Lujan*, 504 U.S. at 560 ("[T]he irreducible constitutional minimum of standing contains three elements."). Courts cannot review and annul government actions on the sole grounds of impropriety—a plaintiff must still demonstrate that he or she suffers from an injury in fact. *See Mellon*, 262 U.S. at 488–89 ("To do so would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess."). In sum, plaintiff does not have standing to assert a nonpecuniary claim based on loss of benefits without more specifically describing his injury.

Here, the absence of injury in fact is a pleading problem. Theoretically, plaintiff could state a claim demonstrating a concrete and particularized injury in fact regarding loss of intended benefits. For instance, plaintiff may have watched public programming often, and due to illegal changes in PEG spending, viewed inferior programming or had a smaller group of programs to choose from. Had he alleged a specific interest in public programming, plaintiff might have been able to demonstrate that misuse of PEG funds caused his loss of benefits. Of course, this argument would require some evidence of the adequate previous benefits versus the inadequate current benefits. But this is a question of fact, not a question of law, which would have been explored in discovery. An amended complaint could remedy this issue. However, for reasons I discuss below, this action must be dismissed with prejudice on other grounds. *See infra* Part II.

II.  *Prudential Standing*

If Article III standing were the only issue, an amended pleading could solve the deficiencies in plaintiff's complaint. However, I must dismiss this case with prejudice on grounds of prudential standing. An amended pleading cannot remedy the prudential standing issues. "Even where plaintiffs meet the bare minimum of the Article III case or controversy requirement, we typically decline to hear cases asserting rights properly belonging to third parties rather than the plaintiff." *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 878 (9th Cir. 2011). The Supreme Court states that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A plaintiff may have "been granted a right to sue by the statute under which he or she brings suit." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004). But here, the FCA provides no private right of action to dispute PEG expenditure for cable subscribers residing in the pertinent jurisdiction. Plaintiff concedes this in his Motion for Remand. Mot. Remand 2. Therefore, plaintiff lacks prudential standing to dispute PEG expenditure by way of the FCA.

Plaintiff's state law claims arise from an asserted fiduciary relationship between plaintiff and defendants. But plaintiff has cited no legal source of such a relationship. Contracts can create trust duties, but the franchise agreements here do not provide plaintiff with a right to enforce their terms. "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) (citing Restatement (Second) of Contracts § 313(2)). The franchise agreements are contracts between cities within Multnomah County and cable providers doing business in those jurisdictions.

Page 9 – OPINION AND ORDER

Because there is no clear intent to the contrary in the franchise agreements, plaintiff is merely an incidental beneficiary to the franchise agreement. Neither the FCA nor the franchise agreements give plaintiff prudential standing to enforce the terms of the franchise agreements. No amended pleading can resolve plaintiff's lack of prudential standing, and therefore, this action must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss (docs. 13 and 14) are GRANTED. Plaintiff pleads no facts that entitle him to relief. Allowing plaintiff to amend his complaint would not cure his lack of prudential standing, which runs throughout all his claims. This case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 7th day of July 2017.

_____
Ann Aiken
United States District Judge